# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| TIM VAN DER WEIDE, <br><br> Plaintiff, <br><br> vs. <br><br> CINCINNATI INSURANCE COMPANY, <br><br> Defendant. | No. C14-4100-LTS <br><br> **MEMORANDUM OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

This case is before me on cross-motions for summary judgment. Plaintiff has filed a motion (Doc. No. 9) for partial summary judgment. In response, defendant filed a resistance (Doc. No. 14) as well as its own motion (Doc. No. 15) for summary judgment. Plaintiff filed a response (Doc. No. 18) to defendant's motion and defendant filed a reply (Doc. No. 19). Following an order (Doc. No. 20) for additional briefing, both parties filed supplemental replies (Doc. Nos. 21, 24).[1] No party has requested oral argument and, in any event, I find that oral argument is not necessary. *See* N.D. Ia. L.R. 7(c). The motion is fully submitted and ready for decision.

## II. PROCEDURAL HISTORY

Plaintiff Tim Van Der Weide commenced this action against defendant Cincinnati Insurance Company (Cincinnati) on November 7, 2014, by filing a three-count complaint

---

[1] On November 18, 2015, defendant filed a motion (Doc. No. 23) to stay this case pending the Iowa Supreme Court's resolution of a case that was likely to have precedential application. The stay was granted (Doc. No. 25) on November 19, 2015, and was lifted (Doc. No. 28) on August 1, 2016, following the Iowa Supreme Court's issuance of an opinion.

(Doc. No. 1). He asserts claims of (1) breach of insurance contract, (2) bad faith and (3) punitive damages in his individual capacity and as trustee of the Tim Van Der Weide Revocable Trust, assignees of Bouma & Company, Inc. (Bouma), and United Fire & Casualty Co. (United Fire). On December 5, 2014, Cincinnati filed an answer (Doc. No. 4) in which it denies liability and asserts various defenses. Trial is scheduled to begin January 29, 2018.

### III. UNDISPUTED FACTS

#### A. *The Underlying Lawsuit*

This case arises from prior litigation involving Van Der Weide and Cincinnati's insured, Bouma. Van Der Weide contracted with Bouma to construct a house in Orange City, Iowa, in 1996. Before construction began, Bouma purchased a commercial general liability (CGL) policy and a separate umbrella policy from Cincinnati, which were in effect from January 30, 1996, to January 30, 1999 (the policy period).[2] After those policies expired, Bouma purchased insurance policies from United Fire.

Bouma utilized various subcontractors to build the home, including Elkato Masonry (Elkato), which was retained to construct brick veneer and masonry around the house. The home was substantially completed in February 1998 and Van Der Weide moved in during August 1998. No claims were made during the policy period.

At some point after moving into the house, Van Der Weide observed a small amount of water ponding in an unfinished storeroom in the basement. This recurred

---

[2] Both parties focus their arguments almost exclusively on the language of the CGL policy and appear, for the most part, to assume that Cincinnati's coverage and defense obligations under the umbrella policy parallel those created by the CGL policy. *See* Doc. No. 9-16 at 37-38; Doc. No. 15-3 at 24-25. As such, and unless otherwise noted, my discussion of policy language in this order will focus on the CGL policy.

2

periodically after rains. Van Der Weide alerted Bouma of the leaking but did not claim that any damage resulted.

In August 2010, Van Der Weide noted that the drywall was peeling in the great room. He asked Bouma to remove the drywall between the windows. Doing so revealed significant water damage. The insulation, studs and sheeting were fully saturated and the wood was severely rotted. To determine the cause, both Bouma and the homeowners insurer retained experts. Kevin Godwin investigated for Bouma and Donald Staley investigated for the insurer. While defective windows were considered as a cause, Godwin and Staley concluded that defective masonry installation permitted substantial water infiltration without any mechanism for the water to escape. Both investigators noted the lack of weeps and through-wall flashing behind the masonry veneer. Godwin also noted substantial mortar bridging of the required cavity between the masonry and the sheeting. As the investigation continued, it was discovered that the walls around the entire house had serious damage, requiring their removal and replacement. Van Der Weide contends that because of the construction defects, moisture infiltrated the masonry and started to cause damage soon after the masonry veneer was installed.

In March 2011, Van Der Weide sued Bouma, Elkato and others in the Iowa District Court for Sioux County (the state court case), alleging negligence and demanding damages. United Fire defended Bouma under a reservation of rights. On July 30, 2012, Bouma and United Fire tendered the defense and indemnity obligations to Cincinnati. On August 10, 2012, Cincinnati rejected the tender and denied any duty to defend Bouma, contending that the alleged defects in the Van Der Weide home were discovered after Cincinnati's policy period ended.

On August 14, 2013, Bouma again tendered defense and indemnity obligations to Cincinnati. Cincinnati retained counsel to evaluate its coverage obligations. On

3

January 9, 2014, Cincinnati again denied coverage on grounds that the property damage occurred outside the policy period. Cincinnati argued that Van Der Weide's pleadings in the state court case contained no allegation that any physical damage or loss occurred during the policy period.

Following this second denial, Bouma's counsel advised Cincinnati that two experts would testify that the property damage occurred due to construction defects and that the damage began shortly after substantial completion in 1998. Cincinnati again denied any duty to defend or indemnify Bouma.

Van Der Weide, Bouma and United Fire then entered into an Agreement for Covenant not to Execute and Stipulation for Entry of Judgment by Confession, pursuant to *Red Giant Co. v. Lawler*, 528 N.W.2d 524 (Iowa 1995). Pursuant to that agreement, Bouma confessed judgment in Van Der Weide's favor, in the amount of $2,000,000, on September 30, 2014, while Bouma and United Fire assigned to Van Der Weide any and all claims Bouma or United Fire may have against Cincinnati or any other person arising out of the incident. Van Der Weide, as the assignee of Bouma and United Fire, then filed this action. Van Der Weide contends Cincinnati breached its insurance contracts with Bouma by failing to defend or indemnify Bouma in the state court case.

### B. *The Policies*

The CGL and umbrella policies Cincinnati issued to Bouma were occurrence policies, obligating Cincinnati to provide coverage for property damage occurring during the policy period. The CGL policy defines "property damage" as:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

4

   b.  Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

Doc. No. 9-2 at 26. The CGL policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. The CGL policy contains the following, "your work" coverage exclusion:

> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." <u>This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor</u>.

*Id*. at 18 (emphasis added). The CGL policy also contains the following exclusion:

> "Property damage" to:
>
> (1) Property you own, rent or occupy:
>
> (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;
>
> (3) Property loaned to you;
>
> (4) Personal property in the care, custody or control of an insured;
>
> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations. If the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.
>
> Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

5

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

*Id.* The CGL policy defines "your work" as follows:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

*Id.* at 27. The umbrella policy provides coverage, as follows:

We will pay on behalf of the insured the ultimate net loss for occurrences during the policy period in excess of the underlying insurance or for occurrences covered by this policy which are either excluded or not covered by underlying insurance because of … property damage, anywhere in the world.

Doc. No. 9-3 at 11. The umbrella policy defines an occurrence as:

an accident, or a happening or event, or a continuous or repeated exposure to conditions which occurs during the policy period which unexpectedly or unintentionally results in **personal injury**, **property damage** or **advertising liability**. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one **occurrence**;

*Id.* at 10 (emphasis in original).

## III. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show

a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id*. However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV. DISCUSSION

Van Der Weide requests entry of an order "that Defendant both owed a duty to defend Bouma & Company in the underlying State Court action, and had a duty to indemnify Bouma & Company under its CGL and umbrella policies, as well as any and all other relief the Court deems appropriate." Doc. No. 9 at 2. Van Der Weide contends the record demonstrates as a matter of law that covered damage to the home occurred during the policy period.

Cincinnati seeks dismissal of all counts of the complaint, contending that it had no duty to defend or indemnify Bouma under the applicable policies. Doc. No. 15 at 3. Cincinnati argues that no "occurrence" took place during the policy period and further contends that various policy exclusions apply.

A.  *Construction of Insurance Contracts Under Iowa Law*

The Iowa Supreme Court recently summarized Iowa law as follows:

> Our rules governing the construction and interpretation of insurance policies are well-settled. "The cardinal principle … is that the intent of the parties at the time the policy was sold must control." *LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 307 (Iowa 1998). Except in cases of ambiguity, we determine "the intent of the parties by looking at what the policy itself says." *Boelman*, 826 N.W.2d at 501. If a term is not defined in the policy, we give the words their ordinary meaning. *Id*. "We will not strain the words or phrases of the policy in order to find liability that the policy did not intend and the insured did not purchase." *Id*.
>
> "[A] policy is ambiguous if the language is susceptible to two reasonable interpretations" when the contract is read as a whole. *Id*. "If the policy is ambiguous, we adopt the construction most favorable to the insured." *Id*. at 502. "An insurance policy is not ambiguous, however, just because the parties disagree as to the meaning of its terms." *Id*. Moreover, "'[a]mbiguity is not present merely because the provision "could have been worded more clearly or precisely than it in fact was."'" *Am. Family Mut. Ins. Co. v. Corrigan*, 697 N.W.2d 108, 114 (Iowa 2005) (quoting *Cairns v. Grinnell Mut. Reins. Co.*, 398 N.W.2d 821, 824 (Iowa 1987)). "If an insurance policy and its exclusions are clear, the court 'will not "write a new contract of insurance"' for the parties." *Boelman*, 826 N.W.2d at 502 (quoting *Thomas v. Progressive Cas. Ins. Co.*, 749 N.W.2d 678, 682 (Iowa 2008)). We construe exclusions strictly against the insurer. *Id*. Nevertheless, "we must enforce unambiguous exclusions as written." *Bituminous Cas. Corp. v. Sand Livestock Sys., Inc.*, 728 N.W.2d 216, 222 (Iowa 2007).

9

*Amish Connection, Inc. v. State Farm Fire and Cas. Co.*, 861 N.W.2d 230, 236 (Iowa 2015).

## B.     *The Duty to Defend*
### 1.     *Applicable Standards*

"The duty to defend arises 'whenever there is potential or possible liability to indemnify the insured based on the facts appearing at the outset of the case.'" *Employers Mut. Cas. Co. v. Cedar Rapids Television Co.*, 552 N.W.2d 639, 641 (Iowa 1996) (quoting *A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.*, 475 N.W.2d 607, 627 (Iowa 1991) (en banc)). Any doubt as to whether the claim is covered by the policy is resolved in favor of the insured. *Id.* "In determining whether there is a duty to defend we look 'first and primarily to the petition for the 'facts at the outset of the case.''" *Employers Mut. Cas. Co.*, 552 N.W.2d at 642 (quoting *First Newton Nat. Bank v. General Cas. Co. of Wisconsin*, 426 N.W.2d 618, 623 (Iowa 1988) (citation omitted)). However, the analysis is not limited to the petition itself, as the scope of inquiry can be expanded to include "other admissible and relevant facts in the record." *First Newton Nat. Bank,* 426 N.W.2d at 623. Expanding the scope of inquiry is especially necessary "'under notice pleading petitions which often give few facts upon which to assess an insurer's duty to defend.'" *Harker's Distribution, Inc. v. Fed. Ins. Co.*, No. 08-CV-4105-DEO, 2009 WL 3199533, at *5 (N.D. Iowa Sept. 30, 2009) (quoting *McAndrews v. Farm Bureau Mut. Ins. Co.*, 349 N.W.2d 117, 119 (Iowa 1984)). "On the other hand, an insurer is not required to provide a defense when no facts presently available to it indicate coverage of the claim merely because such facts might later be added by amendment or introduced as evidence at the trial." *McAndrews*, 349 N.W.2d at 119.

### 2. Analysis

#### a. Was Cincinnati On Notice of an "Occurrence?"

The CGL policy covered Bouma for any "occurrence" during the policy period. "The time of 'occurrence' is when the claimant sustains damages, not when the act or omission causing the damage takes place." *Tacker v. Am. Family Mut. Ins. Co.*, 530 N.W.2d 674, 676 (Iowa 1995) (citing *First Newton Nat'l Bank*, 426 N.W.2d at 623). In determining whether a duty to defend arose, the question is whether Cincinnati had notice that Van Der Weide claimed an occurrence took place during the policy period.

Cincinnati is correct that neither the initial petition nor the amended petition in the state court case contained an express allegation that any damage or loss occurred during the policy period. Instead, Van Der Weide alleged that he discovered damage in 2010 and that this damage was caused by construction defects. He also alleged that the home experienced minor water leakage prior to 2010. The allegations set forth in Van Der Weide's pleadings did not, by themselves, put Cincinnati on notice of an alleged occurrence during the policy period.

Under Iowa law, however, this does not end the inquiry. Iowa's state courts apply "liberal notice pleading standards." *Shumate v. Drake Univ.*, 846 N.W.2d 503, 510 n.2 (Iowa 2014). Thus, I must consider whether Cincinnati was aware of "other admissible and relevant facts in the record" that would create the potential or possible liability to indemnify Bouma. *First Newton Nat. Bank*, 426 N.W.2d at 623. This requires an examination of both (a) what facts were available to Cincinnati and (b) whether those facts demonstrated that an "occurrence," as defined by the CGL policy, took place during the policy period.

*Available Facts*. Before denying a defense and coverage on January 9, 2014, Cincinnati examined the state court pleadings, the policy, the state court's summary judgment rulings, Bouma's answers to interrogatories, Van Der Weide's deposition

transcript, expert reports and other discovery materials. One of the expert reports was prepared by Kevin Godwin, who opined: "The primary cause of deterioration is due to the installation of the brick masonry veneer. This wall clearly takes on bulk water intrusion without provision for such water to exit the wall." Doc. No. 9-6 at 27.

Another report, prepared by Donald Staley, concluded that water infiltration occurred as a result of the windows, window installation, masonry construction and deck construction. Doc. No. 9-5 at 10. Neither report identified the time period during which damage to the home began to occur. However, in email messages sent in April and May 2014, Bouma's counsel notified Cincinnati that Godwin and another expert, Charles Lane, would testify that the damage began shortly after substantial completion, during the policy period. Even after receiving this information, Cincinnati denied any obligation to defend or indemnify.[3]

Based on the record before me, I find it to be undisputed that by no later than May 5, 2014, Cincinnati was on notice (a) that Van Der Weide alleged defective performance by Bouma's subcontractor caused damage during the policy period and (b) that expert testimony would be presented at trial to support the allegation. I now must consider whether Cincinnati's knowledge of these facts was sufficient to trigger a duty to defend Bouma.

***The Meaning of "Occurrence."*** After this action was filed, the Iowa Court of Appeals held that an "occurrence," as defined in the CGL policy at issue in that case, includes damage that results from defective workmanship by the insured's subcontractor. *Nat'l Sur. Corp. v. Westlake Inv.*, LLC, 2015 WL 6509738, 872 N.W.2d 409 (Iowa Ct. App. Oct. 28, 2015) (table). This action was stayed after the Iowa Supreme Court

---

[3] Indeed, Cincinnati's counsel took the position that the experts' opinions as to when damage started to occur were irrelevant, stating: "I don't understand why you think your 'paid expert's' opinion changes anything." Doc. No. 9-15 at 14-16.

granted further review of that decision. On June 10, 2016, the Court affirmed the Court of Appeals. *Nat'l Sur. Corp. v. Westlake Inv., LLC*, 880 N.W.2d 724 (Iowa 2016). The case involved the construction of an apartment complex. The developers and the general contractor purchased a primary CGL insurance policy with $1 million policy limit and an excess CGL insurance policy with a $20 million limit. *Id*. at 727. The policies provided coverage for occurrences during the policy period. *Id*. at 731-33. Defective workmanship by subcontractors ultimately caused widespread damage to the property, including damage to areas of non-defective work product. *Id*. at 737. After an extensive analysis of Iowa case law and holdings in other jurisdictions, the Iowa Supreme Court stated:

> [W]e interpret the insuring agreement in the modern standard-form CGL policy as providing coverage for property damage arising out of defective work performed by an insured's subcontractor unless the resulting property damage is specifically precluded from coverage by an exclusion or endorsement. In addition, we conclude the defective work performed by the insureds' subcontractors falls within the definition of "occurrence" in the insuring agreement appearing in the Arch policy.

*Id*. at 740. The Court also stated

> [W]e conclude defective workmanship by an insured's subcontractor may constitute an occurrence under a modern standard-form CGL policy containing a subcontractor exception to the "your work" exclusion.

*Id*. at 744.

The CGL policy at issue in this case is strikingly similar to the CGL policy addressed in *National Surety*. The definitions of "property damage" are nearly identical while the definitions of "occurrence" are precisely the same. *Compare* Doc. No. 9-2 at 26 and *Nat'l Sur. Corp.*, 880 N.W.2d at 732. The CGL policy here contains the same "your work" exclusion as the policy in *National Surety*, including the same exception to the exclusion that applies "if the damaged work or the work out of which the damage

13

arises was performed on your behalf by a subcontractor." *Compare* Doc. No. 9-2 at 18 and *Nat'l Sur. Corp.*, 880 N.W.2d at 732. Neither policy contains a coverage exclusion for damage caused by the work of subcontractors. Thus, I agree with Van Der Weide that the Iowa Supreme Court's holding in *National Surety* controls my construction of the Cincinnati policies at issue in this case.

Cincinnati, however, argues that the Court's earlier decision in *Pursell Const. Inc. v. Hawkeye-Security Ins. Co.*, 596 N.W.2d 67 (Iowa 1999), compels a different result. In *Pursell*, the Court held that "defective workmanship standing alone, that is, resulting in damages only to the work product itself, is not an occurrence under a CGL policy." *Id.* at 71. In *National Surety*, the Court distinguished *Pursell* on the basis that it addressed defective workmanship that caused damage only to the insured's own work product. *Nat'l Sur. Corp.*, 880 N.W.2d at 737-38. In other words, "*Pursell* was limited by its plain language to situations in which the insured performed defective work and sought coverage for the cost of repairing the defective work product." *Id.* at 738. This case is more akin to *National Surety* than to *Pursell*, as Van Der Weide contends that the subcontractor's defective masonry work caused extensive damage well beyond the insured's own work product. *Pursell* does not control.

Cincinnati also relies on *Tacker v. American Family Mut. Ins. Co.*, 530 N.W.2d 674 (Iowa 1995). However, *Tacker* holds that "the time of 'occurrence' is when the claimant sustains damages, not when the act or omission causing the damage takes place." *Id.* at 676 (*citing First Newton Nat'l Bank*, 426 N.W.2d at 623). Thus, under Iowa law both the date of the discovery of damage and the date of the negligent act giving rise to the damage are irrelevant when an occurrence policy is at issue. Instead, the relevant inquiry is whether damage was sustained during the policy period. Here, as set forth above, Cincinnati was put on notice, no later than May 5, 2014, of Van Der Weide's allegation the home started to sustain damage almost immediately after substantial

completion, during the policy period. In other words, Cincinnati became aware, while the state court case was pending, of a potential "occurrence" that would have triggered an obligation to indemnify Bouma.

### b. *Do Any Exclusions Apply?*

Cincinnati argues that even if damages occurred during the policy period, the "your work" exclusion precludes coverage (and, thus, a duty to defend). Cincinnati notes that Van Der Weide's expert, Kevin Godwin, claims water infiltration happened due to (a) window installation, (b) exterior deck construction and (c) masonry work. According to Godwin, "the primary cause of deterioration is due to the installation of the brick masonry veneer." Doc. No. 9-6 at 27. Godwin also opines that the "missing application of nail-fin protection around the window units does permit the intrusion of water in the wall framing. This has led to damage such as window openings." *Id.*

Bouma's expert, Staley, opines that water infiltration into the home was a combination of the windows, window installation, masonry construction and deck construction. Doc. No. 9-5 at 10. Bouma installed the windows and performed work on the exterior deck, but did not perform the masonry work. To the extent Van Der Weide claims any damages sustained during the policy period were caused by defective work completed by Bouma, as the insured, the "your work" exclusion expressly precludes coverage. However, and as noted above, the "your work" exclusion in Bouma's CGL policy does not apply if the "damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Doc. No. 9-2 at 18. Thus, to the extent defective masonry work by Elkato, acting as Bouma's subcontractor, caused damages during the policy period, the "your work" exclusion is not applicable. *See Nat'l Sur. Corp.*, 880 N.W.2d at 740-41. The "your work" exclusion does not preclude coverage for damages caused by work performed by Bouma's subcontractors.

Cincinnati also relies on the "damage to impaired property" exclusion, which excludes:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work."
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Doc. No. 9-2 at 19.[4]  Again, this exclusion expressly applies to the extent that the claim relates to damages resulting from Bouma's work, but not to any damages related to subcontractor work.

Cincinnati argues, however, that there are fact questions as to whether there is any "impaired property."  Van Der Weide argues that "impaired property" is specifically

---

[4] The CGL defines "impaired property" as follows:

> "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
>     a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>     b.    You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
>
>     a.    The repair, replacement, adjustment or removal of "your product" or "your work"; or
>     b.    Your fulfilling the terms of the contract or agreement.

*Id.* at 24.

excluded from the "your work" exclusion. As such, Van Der Weide contends (a) because the property at issue is physically injured and (b) because the work Bouma performed cannot be "impaired property," this exclusion does not apply. I agree. The exclusion addresses property that is not "your work" but incorporates "your work." Here, the record does not suggest that Elkato's masonry work incorporated Bouma's work. As such, this exclusion does not preclude the possibility that Cincinnati's CGL policy provides coverage for Van Der Weide's claims against Bouma.

In short, I find as a matter of law that a duty to defend arose no later than May 5, 2014, after Cincinnati was put on notice of allegations that defective work by Bouma's subcontractor caused damage to the home to occur during the policy period. I further find that the policy exclusions Cincinnati relies upon did not operate to negate the duty to defend. Van Der Weide's motion for summary judgment will be granted with regard to Cincinnati's duty to defend.

## C.  *The Duty to Indemnify*

### 1.  *Applicable Standards*

"An insurer's duty to defend is separate from its duty to indemnify; the duty to defend is broader than the duty to indemnify." *Employers Mut. Cas. Co. v. Cedar Rapids Television Co.*, 552 N.W.2d 639, 641 (Iowa 1996) (quoting *A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.*, 475 N.W.2d 607, 627 (Iowa 1991) (en banc) (citations omitted)). "In the absence of a duty imposed by law to indemnify another, there is no right to indemnification unless derived from a contract." *McNally & Nimergood v. Neumann-Kiewit Constructors, Inc.*, 648 N.W.2d 564, 570 (Iowa 2002) (citing *Haynes v. Kleinewefers & Lembo Corp.*, 921 F.2d 453, 456 (2d Cir. 1990)). The indemnification agreement in each case determines the rights of the parties. *Alliant Energy-Interstate Power and Light Co. v. Duckett*, 732 N.W.2d 869, 877 (Iowa 2007).

17

When determining a party's right to indemnification, the court must determine (1) under what circumstances is indemnity promised and (2) what is the scope of the area in which indemnity is available. *Id.* at 878.

### 2. *Analysis*

Van Der Weide argues that Cincinnati has a duty, as a matter of law, to indemnify Bouma from Van Der Weide's claims in the state court case. Both the CGL policy and the umbrella policy provide indemnification for any covered property damage that the insured becomes liable to pay. Doc. No. 9-2 at 16; Doc. No. 9-3 at 11.

For the reasons set forth in the preceding subsection, I find that Cincinnati does have a contractual obligation to indemnify Bouma for any covered damages that resulted from defective work performed by Bouma's subcontractors. However, Cincinnati has no duty to indemnify Bouma for damages that resulted from work performed by Bouma itself. The summary judgment record is not sufficient to allow any specific findings as to the extent of Cincinnati's indemnification obligations. Van Der Weide will bear the burden of proving, at trial, the amount of covered damages that were caused by any defective work performed by Bouma's subcontractors.

### V. CONCLUSION

For the reasons set forth herein:
1. Plaintiff's motion (Doc. No. 9) for partial summary judgment is:
    a. **Granted** with regard to defendant's duty to defend.
    b. **Granted in part and denied in part** with regard to defendant's duty to indemnify, as set forth above.
2. Defendant's motion for summary judgment (Doc. No. 15) is **denied in its entirety**.

3. This case will proceed to trial as scheduled.

**IT IS SO ORDERED.**

**DATED** this 12th day of January, 2017.

                                             _____
                                             LEONARD T. STRAND
                                             UNITED STATES DISTRICT JUDGE